UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FRANK JOHNSON,<br><br>     Plaintiff,<br><br>  v.<br><br>PHILLIP VALDEZ, TIM WENGLER,<br>DANIEL PRADO, JOEL YOUNG, TOM<br>KESSLER, JOSEPH CARDONA, ALEC<br>THACKER, current ICC HSA, and<br>JOHN or JANE DOES,<br><br>     Defendants. | Case No. 1:11-CV-00053-BLW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Pending before the Court is ICC Defendants' Motion for Summary Judgment (Dkt. 21), Plaintiff's Second Motion for Enlargement of Time to Respond to the Defendants' Motion for Summary Judgment (Dkt. 29), Plaintiff's Motion to File Permissive Sur-Reply to Defendants' Motion for Summary Disposition (Dkt. 34) and Plaintiff's Motion to Delay a Decision on Defendants' Motion for Summary Disposition and to Reopen Discovery for Period of Ninety (90) Days, Pursuant to F.R.C.P. 56(d) (Dkt. 35). "ICC Defendants" include only Defendants Phillip Valdez, Tim Wengler, Tom Kessler and Alec Thacker.

The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided

**MEMORANDUM DECISION AND ORDER - 1**

by oral argument.  Therefore, the Court will decide these matters on the written motions, briefs, and record without oral argument.  D. Idaho L. Civ. R. 7.1.

The Court will grant Plaintiff's Second Motion for Enlargement of Time to Respond to the Defendants' Motion for Summary Judgment (Dkt. 29).  The Court will deny Plaintiff's Motion to File Permissive Sur-Reply to Defendants' Motion for Summary Disposition (Dkt. 34) and Plaintiff's Motion to Delay a Decision on Defendants' Motion for Summary Disposition and to Reopen Discovery for Period of Ninety (90) Days, Pursuant to F.R.C.P. 56(d) (Dkt. 35).  These two motions will be denied, because additional discovery at this time would be futile.

The Court will grant in part and deny in part ICC Defendants' Motion for Summary Judgment, as set forth below.

## BACKGROUND

Plaintiff Frank Johnson is an inmate under the jurisdiction of the Idaho Department of Correction ("IDOC").  From January 11, 2008, to the present, Plaintiff has been incarcerated at the Idaho Correctional Center ("ICC").

Plaintiff has a number of health issues.  In April of 2004, Plaintiff was diagnosed with colon cancer.  (Dkt. 12, p. 5.)   As a result, Plaintiff underwent chemotherapy, had a malignant tumor removed from his descending colon, had a large portion of his colon removed and had a stoma implanted for life long waste removal.  (*Id.*)  Additionally, Plaintiff suffers from diabetes insipidus, chronic constipation, Hepatitis C and gout.  (Dkt. 12, p. 1.)

**MEMORANDUM DECISION AND ORDER - 2**

Plaintiff has suffered from diabetes insipidus his entire life.  (Dkt. 23, Deposition of Franklin Johnson, ("Johnson Depo.") 17:2-12.)  The condition is essentially where the kidneys are unable to conserve water and is characterized by excessive thirst and urination, dehydration and chronic constipation.  (Dkt. 21-3, Declaration of David Agler, M.D., ("Agler Decl.") ¶ 18.)  To treat the symptoms of this condition, Plaintiff takes Desmopressin ("DDAVP"), Hydrochlorothiazide ("HCTZ") and Aldactone.  (*Id*.) DDAVP helps treat excessive thirst and excessive urination.  HCTZ and Aldactone are diuretic "water pills" used to decrease fluid retention.  (*Id*.)

Plaintiff has suffered from gout since approximately 2001.  (Dkt. 23, 16:8-13.) Gout is a type of arthritis where uric acid builds up in the blood and causes joint inflammation.  (Dkt. 21-3, ¶ 23.)  Plaintiff takes Allopurinol and potassium to help decrease the uric acid levels in his blood, as well as anti-inflammatories, such as Naproxen, Indomethesin/Indocin and Feldene.  (*Id*.)

Due to Plaintiff's stoma, it is important for Plaintiff to avoid significant constipation so as to prevent undue strain on the stoma.  (*Id*. at ¶ 26.)  Thus, Plaintiff takes various laxatives, including Bisacodyl, Cascara Sagrada, Reglan, Milk of Magnesia and Miralax.  (*Id*. at ¶ 21.)  In addition, Plaintiff also takes Amitiza, which helps to regulate his bowel movements.  (*Id*. at ¶ 22.)

Immediately upon Plaintiff's arrival at ICC, Plaintiff claims he began to experience delays in receiving his prescribed medications.  (Dkt. 12, p. 6.)  These delays were numerous and sometimes lengthy.  (*Id*.)  In addition, Plaintiff claims that he was not

**MEMORANDUM DECISION AND ORDER - 3**

provided a diet at ICC which was compatible with his stoma.  (*Id*.)  Plaintiff claims the

"consequences of these on-going shortages of prescribed medications, plus the imposition

of an improper diet, has been that Plaintiff has suffered needless pain and anxiety . . . , as

well as the eventual destruction of his stoma and the necessity for two (2009 and 2011)

separate operations to repair that device thus far."  (*Id*.)

On February 15, 2011, Plaintiff filed his original complaint wherein he alleged that

Defendants denied him proper care for ongoing medical problems, including: failure to

provide regular medications, failure to provide a medical diet compatible with his

colostomy, imposing a grievance system that delayed proper medical treatment and

erroneously charging him for chronic care medication.  (Dkt. 3.)  However, upon the

Court's initial review, the Court concluded that Plaintiff had not stated sufficient

allegations about how each Defendant personally was involved in Plaintiff's medical care

and how each Defendant allegedly violated Plaintiff's rights.  (Dkt. 8, p. 3.)  The Court

provided Plaintiff with an opportunity to amend his Complaint and limited his claims to

the Eighth Amendment and state law medical claims.  (*Id*. at 4-5.)  The Court further

provided that while there is no separate claim regarding the grievance system, Plaintiff

could use its alleged misuse to prove his other claims.  (*Id*. at 6.)

On October 3, 2011, Plaintiff filed his Amended Complaint.  (Dkt. 12.)  The Court

reviewed the Amended Complaint pursuant to 28 U.S.C. § 1915A, and entered an Order

permitting Plaintiff to proceed against Defendants Phillip Valdez, Tim Wengler, Daniel

Prado, Joel Young, Tom Kessler, Joseph Cardona and Alec Thacker.  (Dkt. 11.)

**MEMORANDUM DECISION AND ORDER - 4**

Defendant Wengler is the current ICC Warden.  (Dkt. 21-2, ¶ 3.)  He has held this position since March 2010.  (*Id*.)  Defendant Phillip Valdez was his predecessor.  (*Id*.)  Defendant Tom Kessler is the current ICC Assistant Warden.  (*Id*.)  His predecessor was Daniel Prado.  (*Id*.)  Defendant Thacker is currently the Health Services Administrator.  (*Id*.)  Defendants' duties are administrative and include responding to inmate grievances.  (*Id*.)

On September 26, 2012, Defendants Valdez, Wengler, Kessler and Thacker filed this Motion for Summary Judgment.  (Dkt. 21.)  Defendants argue summary judgment is appropriate because: (1) Defendants are not personally responsible for making any of Plaintiff's medical decisions; (2) Plaintiff fails to establish deliberate indifference regarding delays in his medication; (3) Plaintiff fails to establish deliberate indifference regarding medical treatment related to his diet; (4) the record is devoid of sufficient evidence to support a cause of action based on negligence; and (5) there is insufficient evidence to support a claim of being incorrectly charged for chronic care medications.  (Dkt. 21-1.)

## STANDARD OF LAW

### 1.    Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of the

**MEMORANDUM DECISION AND ORDER - 5**

summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.

   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The requirement is that there be no *genuine* dispute as to any *material* fact.  Material facts are those "that might affect the outcome of the suit."  *Id.* at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed.  To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B).  The Court must consider "the cited materials," but it may also consider "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

   If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

**MEMORANDUM DECISION AND ORDER - 6**

existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a

**MEMORANDUM DECISION AND ORDER - 7**

person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**2.      Deliberate Indifference**

Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  In the Ninth Circuit, the test for deliberate indifference consists of two parts.  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain.'"  *Id*. at 1059 (citing *Estelle*, 429 U.S. at 104).  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  *Id*. at 1060.  The second prong - defendant's response to the need was deliberately indifferent- is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Id*. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id*. at 1059.

Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983.  *Id*. (citing *Estelle*, 429 U.S. at 105).  In addition, differences in judgment between an inmate and prison medical personnel regarding

**MEMORANDUM DECISION AND ORDER - 8**

appropriate medical diagnosis and treatment are not enough to establish a deliberate

indifference claim.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  If the

defendants are able to show that medical personnel have been "consistently responsive to

[the inmate's] medical needs, and there has been no showing that the medical personnel

had "subjective knowledge and conscious disregard of a substantial risk of serious

injury," a plaintiff's claims may be dismissed by summary judgment prior to trial.

*Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

## DISCUSSION

### 1.     Defendants' Personal Responsibility

Defendants are being sued under both a theory of personal and supervisor liability.

Defendants argue that they cannot be held liable for an Eighth Amendment violation as

non-medical supervisors, because they were not personally involved in Plaintiff's medical

treatment.  The Court disagrees.

A defendant may be held liable as a supervisor under § 1983 "if there exists either

(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

causal connection between the supervisor's wrongful conduct and the constitutional

violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  "A plaintiff must show

the supervisor breached a duty to plaintiff which was the proximate cause of the injury.

The law clearly allows actions against supervisors under section 1983 as long as a

sufficient causal connections is present and the plaintiff was deprived under color of law

of a federally secured right."  *Id*. (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435,

MEMORANDUM DECISION AND ORDER - 9

1447 (9th Cir. 1991)(en banc)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervisor, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208.

The decision in *Michaud v. Bannister*, 2012 WL 6720602 (D. Nevada 2012) is illustrative of a supervisor's personal liability. In *Michaud*, a prisoner sued a warden and medical director for violations of his Eighth Amendment rights arising out of deliberate indifference to his need for cataract removal surgery. The defendants argued that the warden could not be liable for an Eighth Amendment violation, because he was not responsible for or personally involved in providing the plaintiff medical care. *Id*. at *9. However, the defendants conceded that the warden responded and denied the plaintiff's grievance concerning his medical care. *Id*. at *10. The court determined that the denial was sufficient to demonstrate personal involvement and to hold the warden liable. *Id*. The court provided the following:

> Defendants cannot shield [the warden] from liability while simultaneously acknowledging his response to the grievance. As an Eighth Amendment violation can attach to *any* official who denies an inmate constitutionally adequate medical

**MEMORANDUM DECISION AND ORDER - 10**

care, a supervisor who denies medical care via a grievance is equally liable as a physicians' panel determining the medical necessity of a particular treatment. *See Hutchinson*, 838 F.2d at 394 (noting that prison officials who "deny, delay or intentionally interfere with medical treatment" may be liable for an Eighth Amendment violation). Accordingly, both Defendants may be found personally liable in this action.

*Id*.

As in *Michaud*, Defendants in the present matter contend that they are not liable under the Eighth Amendment, because they are non-medical supervisors and did not treat Plaintiff. Defendants argue, "under CCA company policy, final clinical judgment rests with the responsible physician, not the Warden, Assistant Warden or Health Services Administrator." (Dkt. 21-1, p. 11.) Nevertheless, as in *Michaud*, Defendants Valdez, Wengler, Kessler and Thacker responded to Plaintiff's grievances regarding his medical care and denied his requests for a special diet. (Dkt. 21-4, Declaration of Margaret Purcell, ¶¶ 8, 18.) Prison officials who "deny, delay or intentionally interfere with medical treatment" may be liable for an Eighth Amendment violation. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Therefore, like in *Michaud*, the actions of these Defendants is sufficient to demonstrate their personal involvement and to create a material issue of fact as to whether they were the proximate cause of Plaintiff's alleged Constitutional violations regarding diet.

As to Plaintiff's claims regarding his medications, Defendants Valdez, Kessler and Thacker responded to Plaintiff's grievances regarding chronic delays. (Dkt. 21-4, ¶¶ 10, 17.) While these Defendants did not specifically deny these grievances, Plaintiff alleges

that they did nothing to rectify the delays.  "A supervisor can be liable . . . for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Starr*, 652 F.3d at 1208.  Therefore, the actions of Defendants Valdez, Kessler and Thacker is sufficient to demonstrate a material issue of fact as to whether they knew or reasonably should have known of a potential constitutional deprivation and acquiesced in its continuance.  (Plaintiff has not created an issue of fact as to whether Defendant Wengler knew or reasonably should have known of Plaintiff's delay in receiving medications.)

2.      **Deliberate Indifference Regarding Delays In Plaintiff's Medication**

To show deliberate indifference to a serious medical need where there is a delay in treatment, plaintiff must show that the failure to provide earlier treatment was harmful. *See McGuckin*, 974 F.2d at 1060.  Plaintiff does not need to show that the harm was substantial, although doing so would provide additional support for the claim that the defendants were "deliberately indifferent" to his medical needs.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference."  *Id*.

The parties dispute whether Plaintiff has demonstrated with sufficient evidence that delay in receiving his medications caused him harm.  While Defendants claim that Plaintiff has not come forth with any "verifying medical evidence" to support his claim and rebut Dr. Agler's opinions, Plaintiff claims that his testimony, his medical records,

**MEMORANDUM DECISION AND ORDER - 12**

and his treatment are sufficient to show the delay's detrimental effect.  The Court agrees with Plaintiff.  *See Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (medical records, treatment and inmate's testimony were sufficient to show delay unnecessarily prolonged and exacerbated inmate's pain); *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004) (inmate's testimony, medical records and common sense was sufficient to demonstrate harm).

Plaintiff's medical records and Dr. Agler's declaration outline Plaintiff's health and treatment.  Plaintiff is a post-operative colon-rectal cancer patient, who currently suffers from diabetes insipidus, hepatitis C, constipation and gout.  (Dkt. 21-3, Agler Decl.  ¶¶ 18, 20, 23.)  For diabetes insipidus, Plaintiff is prescribed DDAVP, HCTZ and Aldactone.  (*Id*. at ¶18.)  For constipation associated with his diabetes, Plaintiff takes Bisacodyl, Reglan, Milk of Magnesia, Cascara Sagrada and Amitiza.  (*Id*. at ¶¶20-22 .)  For gout, he takes Allopurinol and potassium.  (*Id*. at ¶23.)  Additionally, due to Plaintiff's colostomy, Dr. Angler states it is important for Plaintiff to avoid significant constipation in an effort to limit undue strain on the stoma.  (*Id*. at ¶ 26.)

Plaintiff's need for medication to treat constipation is substantial.  The Appendix attached to Plaintiff's First Amended Complaint sets forth the dates he was delayed in receiving those medications.  (Dkt. 12, p. 11-12.)  Plaintiff does not allege a single isolated exception, but rather claims chronic delays.  The Appendix includes the following multiple occasions when Plaintiff did not receive Bisacodyl, Cascara, Amitiza and/or KOPs ("carry-on-person" medications which included laxatives (Dkt. 23, Johnson

Depo. 61:15-18)):

| | |
|---|---|
| 9/25/08 | No KOPs today - HTCZ (diabetes) Out approximately 10 days by 9/27. |
| 10/03/08 | Supply day: Informed by Janet Stanger (J.S.) that per Paula Miser no more Bisacodyl in the bags.  Had been given that way for almost ten (10) months. |
| 10/18/08 | Saturday: Told to pick up Cascara but prescription was not there. Val/Pharm. Had ordered on 10/06/08 - Report to J.S. |
| 10/21/08 | Pill Call; Still no Cascara - showed on 10/23/08; Liquid Laxative single dose. |
| 10/23/08 | Amitiza - Ordered on 10/06/08 arrived today.  Laxative. |
| 9/09/09 | KOPs ordered on 08/14/09 still not here.  5 different.  Reordered & showed on 09/16/09 and 10/21/09. ??? |
| 11/05/09 | Standard wrote for Bisacodyl.  Given in a bag.  KOPs ordered 11/7 |
| 12/09/09 | KOPs showed - Refilled on 12/30/09. |
| 3/17/10 | Recv'd KOPs - No Bisacodyl - Requested from Pharm 03/19 Requested again.  Cordova there, admits there's a problem - given a few in a bag. |
| 7/07/10 | Recv'd KOPs except Bisacodyl, which was ordered on 6/03.  7/22: given some in a bag at Medical. |
| 8/11/10 | Recv'd Bisacodyl in cards for first time.  90 pills. 3 cards. |

(Dkt. 12, p. 12.)  Additionally, Plaintiff has presented testimony and records that Defendants' failure to provide these medications caused Plaintiff pain, as well as two herniated stomas. (Dkt. 30, p. 6, 9; Dkt. 30-1, p. 7; Dkt. 30-2, p. 15.)

Dr. Agler opines that the delay did not cause Plaintiff harm; however, he admits ICC has experienced delays in providing Plaintiff his prescribed medications.  (Dkt. 21-3, Agler Decl. ¶ 16.)  While no jury could determine, solely on Plaintiff's record, whether it was the delay in medicine or the underlying condition that caused the herniated stomas, a reasonable jury could conclude based on the medical records, Dr. Agler's declaration and Plaintiff's testimony that the delays unnecessarily caused Plaintiff pain and suffering.

**MEMORANDUM DECISION AND ORDER - 14**

*See Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (recognizing that "hours of needless suffering" can constitute harm).

Plaintiff has also presented evidence of chronic delays in receiving medications associated with diabetes and gout.  While Dr. Agler has stated that Plaintiff could medically discontinue these medications, he notes that the medications are continued "in an effort to make [Plaintiff] more comfortable."  (Dkt. 21-3, ¶¶ 19, 23.)  Plaintiff has testified, and his records indicate, that Plaintiff feels very sick when he does not receive these medications.  (Dkt. 23, Johnson Depo. 62:10-17.)  A reasonable jury could conclude that delay in receiving these medications, likewise caused Plaintiff unnecessary pain and suffering.

Therefore, given that Defendants Valdez, Kessler and Thacker responded to Plaintiff's grievances regarding chronic delays and allegedly did nothing to rectify the delays, genuine issues of material fact exist as to whether these Defendants were deliberately indifferent to the delays in Plaintiff's medication.

**3.     Deliberate Indifference Regarding Plaintiff's Diet**

Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs by failing to provide him with a "low residue diet."  The denial of a medically-necessary diet may support a finding of deliberate indifference to serious medical needs.  *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (inmate taken off his diabetic diet could state a claim for deliberate indifference if he could show that defendants knew he needed such a diet and deliberately withheld it); *Byrd v. Wilson*, 701

**MEMORANDUM DECISION AND ORDER - 15**

F.2d 595, 595 (6th Cir. 1983) (reversing district court's dismissal of deliberate indifference claim where inmate requiring special medical diet was denied medication and special diet for two days); *Masden v. Risenhoover*, 2013 WL 1345189 (N.D.Cal. 2013).

Defendants argue the record shows that ICC medical staff and Plaintiff have worked together closely to provide him an appropriate diet.  (Dkt. 21-1, p. 14.)  The Court agrees.  Shortly after Plaintiff came to ICC in 2008, Plaintiff was put on a low fat diet by the former Medical Director, Dr. Stander.  (Dkt. 21-2, ¶ 14.)  It was later changed to a modified consistency diet, meaning no corn, no cabbage, no bologna and no potato skins. (*Id*.)  The low fat diet was then renewed.  (*Id*.)  Dr. Sander then put Plaintiff on a nutrition support diet to combat Plaintiff's twenty (20) pounds weight loss.  (*Id*.)  Then on April 30, 2010, Plaintiff visited with Dr. Sander for examination of his stoma and discussed his protein intake.  (*Id*.)  In May 2010, the nutritional support diet was cancelled and Plaintiff went on the regular diet.  (*Id*.)  Then in September 2010, Plaintiff visited Dr. Angler regarding his constipation and was ordered a diabetic diet for content.  (*Id*.)  In May 2011, Plaintiff again visited Dr. Angler regarding his diet and was ordered on a low fat diet. (*Id*. at ¶ 14.)

In June 2011, Plaintiff underwent surgery by Dr. David Brown to repair a parastomal hernia related to his stoma.  (Dkt. 21-2, ¶14.)  After the surgery, Plaintiff requested to be put on a "low residue" diet.  (*Id*. at ¶ 15.)  A low residue diet is composed of foods that are easily digested, such as, french toast, skinless potatoes, milk, fruit such

**MEMORANDUM DECISION AND ORDER - 16**

as bananas and melons, yogurt and eggs.  (*Id*.)  Defendants contend that Plaintiff was not

put on this particular diet because ICC does not have this particular diet, but that Dr.

Agler determined that the "low residue" diet could be achieved through the regular prison

menu.  (*Id*.)  Thus, Defendants argue that Plaintiff cannot show deliberate indifference to

his serious medical needs.

Plaintiff responds by questioning Dr. Agler's credibility.  (Dkt. 30, p. 6.)  Plaintiff

also questions the accuracy of Dr. Agler's declaration.  (*Id*. at 6-7.)  For instance, Plaintiff

contends that when he came to the ICC he was on the "modified consistency" diet, not the

regular diet.  (*Id*.)  In addition, Plaintiff argues that he did not request a "low residue"

diet, but that Dr. Brown "directed" that he be placed on the diet in order to preserve the

surgery to Plaintiff's stoma.  (*Id*. at 7.)  Further, he contends that statements denying the

ability of ICC Medical to order a low residue diet are disingenuous, because ICC Medical

ordered such a diet for Plaintiff on November 19, 2012.  (*Id*.)

The Court concludes that Defendants are entitled to summary judgment on this

issue.  To begin with, Plaintiff's challenge to Dr. Agler's credibility is irrelevant here.

"[A] general challenge is insufficient to raise an issue of fact regarding credibility; rather,

specific facts must be set forth that raise an issues of fact."  *National Union Fire Ins. Co.*

*of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 96-97 (9th Cir. 1983).  Plaintiff has

offered no specific facts why Dr. Agler's credibility should be questioned here.  Instead,

Dr. Agler's declaration evidences that he is a licensed physician, Medical Director and

Lead Physician of the Idaho Correctional Center.  (Dkt. 21-3, ¶¶ 2, 3 and 6.)  As Medical

**MEMORANDUM DECISION AND ORDER - 17**

Director and Lead Physician, he has personally overseen Plaintiff's medical care and has personal knowledge of Plaintiff's medical care.  (*Id*. at ¶ 7.)  He is, therefore, qualified and competent to testify as to the type, quality and quantity of medical treatment received by Plaintiff since being transferred to ICC in January 2008.

Next, although Plaintiff alleges certain "disputed facts", such as, he was on the "modified consistency" diet when he arrived at ICC and Dr. Brown ordered him a "low-residue" diet, these facts are also irrelevant.  The record indicates that ICC medical was responsive to Plaintiff's diet needs.  Plaintiff was seen numerous times by ICC physicians and sufficient effort was made to provide him with an appropriate diet, given the diets available.  Indeed, Plaintiff admits that ICC worked with him to find a diet solution to fit his situation.  (Dkt. 23, Johnson Depo. 18:20-19:8.)  While Defendants did not provide a specific "low residue" diet, as it was not available at ICC, it is clear that Defendants were not deliberately indifferent.  Furthermore, Dr. Agler concluded that it could be accommodated by the prison's regular tray.  *See Abernathy v. Cunningham*, 393 F.2d 775, 778 (4th Cir. 1968) (correctional facility is not obligated to provide a special meal to any inmate if an inmate can voluntarily refrain from eating certain offensive portions of meals and remain healthy).

Finally, the fact that ICC began providing the low-residue diet to Plaintiff on November 19, 2012 has no bearing on whether ICC offered the diet in prior years.  As Defendants note, ICC did not previously have the diet, but worked with Plaintiff and concluded that the diet could be accommodated with a regular tray.

**MEMORANDUM DECISION AND ORDER - 18**

**4.      State Based Negligence Claim**

In addition to alleging Constitutional deprivations in violation of 42 U.S.C. § 1983, Plaintiff's First Amended Complaint also asserts state law claims of negligence against Defendants.  Defendants argue that the record is devoid of facts to support any such claim.  (Dkt. 21-1, p. 17.)  Plaintiff has not addressed his state based claims nor proffered any evidence to show a genuine issue of material fact.  Therefore, the Court will grant Defendants summary judgment on this issue.

**5.      State Claim for Being Incorrectly Charged for Chronic Care Co-Payments**

In addition to Plaintiff's § 1983 claims and negligence claims, Plaintiff also alleges in his First Amended Complaint that he has been wrongly charged for co-payments on various chronic care medications.  However, Plaintiff states in his response that he is abandoning this claim and that he waives further argument on the issue.  (Dkt. 30, p. 9.) Therefore, the Court will grant Defendants summary judgment on this issue as well.

**ORDER**

**IT IS ORDERED:**

1.      Plaintiff's Second Motion for Enlargement of Time to Respond to the Defendants' Motion for Summary Judgment (Dkt. 29) is GRANTED.

2.       Plaintiff's Motion to File Permissive Sur-Reply to Defendants' Motion for Summary Disposition (Dkt. 34) is DENIED.

3.      Plaintiff's Motion to Delay a Decision on Defendants' Motion for Summary Disposition and to Reopen Discovery for Period of Ninety (90) Days,

Pursuant to F.R.C.P. 56(d) (Dkt. 35) is DENIED.

4.      ICC Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, as set forth above.  Defendant Tim Wengler shall be DISMISSED with prejudice from the current action.

5.      Defendants Daniel Prado, Joel Young and Joseph Cardona are DISMISSED without prejudiced, because they were never served, answered or waived service pursuant to the Court's Order (Dkt. 11).

5.      Plaintiff shall consult with ICC Defendants' counsel no later than 14 days after entry of this Order, to determine whether Plaintiff and any Defendant is willing to attend a judicial settlement conference with a United States Magistrate Judge to attempt to settle the remaining issues.  If so, then Defendants' counsel shall file a request for referral to a settlement conference.  Otherwise, this case will be set for a jury trial.

DATED:  **August 16, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 20**